IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON BENNETT, etc., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0330-WS-M |
| | ) |
| BOYD BILOXI, LLC, etc., | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER**

This matter is before the Court on the defendant's motion to dismiss the second amended complaint or, in the alternative, to strike the second amended complaint or the class allegations. (Doc. 46). The parties have filed briefs in support of their respective positions, (Docs. 47, 51, 52), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be denied and that the alternative motion to strike is due to be granted in part and denied in part.

**BACKGROUND**

According to the second amended complaint, (Doc. 44), the plaintiff received a number of pre-recorded telephone messages from the defendant. Most of them were substantively identical to the following sample:

> Hello, this is IP Casino, Resort and Spa calling to invite you to enjoy 2 free tickets to see the Kenny Wayne Shepherd Band. If you wish to opt-out of future calls, please dial 877-388-5999 and mention the opt out number 5822. Jason Bennett, join us and enjoy 2 free tickets to see the Kenny Wayne Shepherd Band on Saturday, July 5th. Tickets are limited so reserve your tickets today. To take advantage of this great offer now, please call 1-888-946-2847 x 5152 and have your BConnected card ready to reserve your ticket, or visit BConnected online to view all of your offers. Thank you

and we look forward to your visit here at IP Casino, Resort and
Spa.

(*Id*. at 5).  Count One alleges that these calls violated the Telephone Consumer Protection Act ("the Act"), and Count Two alleges the violations were knowing and/or willful so as to trigger heightened penalties under the Act.  (*Id*. at 10-11).  The second amended complaint also seeks certification of a class action.

The defendant argues that its calls did not violate the Act.  Should this argument fail, the defendant asks that the second amended complaint be stricken because it differs from the pleading which the plaintiff received permission to file.  Should that argument fail, the defendant requests the Court to dismiss or strike the class allegations.

## DISCUSSION

**I. Motion to Dismiss.**

The motion to dismiss is brought pursuant to Rule 12(b)(6).  (Doc. 46).[1] "A defendant bears at least the initial burden of demonstrating that it is entitled to dismissal under Rule 12(b)(6)."  *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238 (S.D. Ala. 2013); *accord Smith v. Seaport Marine, Inc*., 919 F. Supp. 2d 11267, 1275 n.9 (S.D. Ala. 2013).

Although the defendant denies that the second amended complaint satisfies *Bell Atlantic Corp. v. Twombly*, 550 U.S. 444 (2007), (Doc. 47 at 2-3), it does not present a genuine *Twombly* argument.  The defendant does not argue, as under *Twombly*, that the second amended complaint is nominally consistent with liability but that the plaintiff should have pleaded additional facts in order to move potential liability from the merely possible to the plausible.  550 U.S. at 557, 570.  Instead, the defendant argues that the facts the plaintiff has pleaded are inconsistent with liability under the Act.  This argument implicates the principle

---

[1] The motion also invokes Rule 12(b)(1), but the defendant suggests no defect in subject matter jurisdiction.

that "[d]ismissal is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *D.P. ex rel. E.P. v. School Board*, 483 F.3d 725, 728-29 (11th Cir. 2007) (internal quotes omitted).

The parties agree that Congress, through the Act, delegated much authority for its implementation to the Federal Communications Commission ("FCC"). They agree that the FCC's implementing regulations, as relevant here, prohibit covered entities from "[i]nitiat[ing], or caus[ing] to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, … other than a call made with the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2).[2] And they agree, at least for purposes of this motion, that the defendant is a covered entity, that the calls at issue utilized a prerecorded voice, and that the plaintiff had not previously given express written consent to receive such calls. The question is whether the defendant has carried its burden of showing, as a matter of law, that the calls constituted neither "telemarketing" nor "advertisement."[3]

The FCC defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. § 64.1200(f)(12).

The defendant fails to address in any fashion the express allegation of the second amended complaint that the calls meet the FCC's definition of

---

[2] (Doc. 44 at 3; Doc. 47 at 4-5).

[3] The second amended complaint alleges they are either or both. (Doc. 44 at 3, 5).

"advertisement." The defendant has therefore failed to carry its initial burden on motion to dismiss, which must to that extent be denied.[4]

As for "telemarketing," the defendant argues that the calls at issue "sought only to provide complimentary tickets to the Plaintiff." (Doc. 47 at 9). The plaintiff "was simply informed of his two free tickets to events at IP Biloxi." (*Id*. at 8). The defendant asks the Court to employ "common sense" to reach the conclusion that its calls "did not encourage the Plaintiff to engage in future commercial transactions with" the defendant. (*Id*. at 9).

Had its emissary merely notified the plaintiff he was entitled to free tickets and then stopped talking, the defendant might have an argument. But the voice went on, suggesting that the plaintiff "visit BConnected online to view all of your offers." The second amended complaint alleges that this site "offered discounts on room reservations, coupons/discounts for food purchases," as well as ostensibly "free play" on the casino floor. (Doc. 44 at 5-6). That is, the online "offers," or at least some of them, were offers to sell – not to give away with no strings attached – various goods and services. The defendant's calls patently encouraged the plaintiff to visit this site and see what goods and services the defendant had for sale. None of the four cases on which the defendant relies support the proposition

---

[4] In its reply brief, the defendant insists that "the messages sent to Plaintiff did not discuss the commercial availability or quality of any property, goods, or services." (Doc. 52 at 5). Although the defendant says it made this argument in its principal brief, (*id*.), it did not, and it is too late to raise it on reply. "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining rationale). The defendant offers no reason it should be excused from this rule. Since the second amended complaint explicitly alleges that the calls constituted "advertisements" under the Act, (Doc. 44 at 3, 5), the Court concludes that no such reason exists.

At any rate, the defendant's argument rests only on its ipse dixit, which simply parrots the regulatory definition without any analysis of its language, without any discussion of cases considering the definition, and without any comparison of the allegations of the second amended complaint to that definition. It is, in a word, inadequate even were it to be considered.

that encouraging a call recipient to review what the caller has for sale is not a "call or message for the purpose of encouraging the purchase … of … goods, or services."

On the contrary, the defendant's cases accentuate the implausibility of its position. The defendant believes that *Aderhold v. Car2go N.A.*, 2014 WL 798402 (W.D. Wash. 2014), helps its case because the Court there rejected the argument that a text message directing a newly signed-up member to enter his activation code into an e-mailed link, which "ultimately connected to [the defendant's] website which contains promotions for [the defendant's] service," constituted telemarketing. *Id*. at *1, 9. But *Aderhold* actually underscores the problem with the defendant's position. In *Aderhold*, there was "no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit [the plaintiff] to complete registration." *Id*. Here, in stark contrast, the defendant's message explicitly invited the plaintiff to peruse the defendant's offerings of goods and services.

In *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), another of the defendant's authorities, the Court accepted the FCC's position, as set forth in the report and order adopting amendments to Section 64.1200 (the "2003 Report"),[5] that "so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited." *Id*. at 917-18. If calls contain prohibited telemarketing or advertising, "[a]ny additional information provided in the calls does not inoculate them." *Id*. at 918. Thus, any customer service or informational aspect to the defendant's notification that the plaintiff was entitled to free show tickets does not insulate the defendant from liability for any advertisement or telemarketing contained elsewhere in the same message.

---

[5] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014 (F.C.C. July 3, 2003).

The *Chesbro* Court also agreed with the FCC's position that "[a]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message." 705 F.3d at 918 (internal quotes omitted). The Ninth Circuit "approach[ed] the problem with a measure of common sense" (as the defendant asks the Court to employ). *Id.* That is, in determining the purpose of the defendant's calls, a court does not passively accept a defendant's tortured explanation but uses common sense to assess what the defendant was truly seeking to accomplish.

Moreover, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro*, 705 F.3d at 918. Nor must the caller's purpose be an immediate sale: "Because the calls encouraged recipients to engage in future purchasing activity, they also constituted telemarketing under the DNC [do not call] regulation." *Id.*[6]

Applying these principles to the regulatory definition of telemarketing, the question is whether, viewed through the lens of common sense, one purpose of the defendant in calling the plaintiff was to encourage him to buy goods or services in the future, and neither the defendant's failure to mention any particular goods or services nor a second purpose of offering free tickets is inconsistent with such a purpose. As noted, the defendant patently encouraged the plaintiff to view online all its offers for sale. Employing common sense, what possible purpose could the defendant have for such an encouragement other than that of obtaining future sales

---

[6] The Ninth Circuit employed a similar analysis in evaluating whether a communication constituted "advertisement." Because, as noted in text, the defendant failed to engage the "advertisement" component of the second amended complaint, the Court need not elaborate on how seriously *Chesbro* damages the defendant's ability to successfully oppose that aspect of the lawsuit.

to the plaintiff of the goods and services being offered?  The defendant suggests none.[7]

Instead, the defendant argues that dual-purpose calls cannot violate the Act or its implementing regulations unless (1) the call is made to a residential phone (not a cellular phone);[8] and (2) the objectionable purpose is "advertisement" (not "telemarketing").  (Doc. 52 at 5-6).  The Court addresses these contentions in reverse order.

It is true that the FCC discussed dual-purpose calls in the context of advertisement, but that appears to be only because the examples presented to it involved advertisement.[9]  The defendant has not attempted to support the improbable idea that the FCC considers dual-purpose calls to be prohibited if the objectionable purpose is advertisement but considers them to be permissible if the objectionable purpose is the equally restricted one of telemarketing.  Moreover, and as discussed above, the second amended complaint asserts that the calls constituted advertisement as well as telemarketing, and the defendant has not shown the contrary.

The defendant notes that Section 64.1200(e) provides that subsections (c) and (d) apply to calls to wireless numbers "to the extent described in" the 2003 Report.  Because the regulation does not similarly express the scope of subsection (a)(2), the defendant concludes the FCC could not have intended the dual purpose

---

[7] This silence does not stem from any failure of the plaintiff to point out the significance of the "visit BConnected online to view all of your offers" language; the second amended complaint and the plaintiff's brief repeatedly emphasize this language as reflecting both "advertisement" and "telemarketing."  (Doc. 44 at 5-6; Doc. 51 at 4, 8-9, 12).

[8] The defendant understands that the calls to the plaintiff were made to his cell phone.  (Doc. 47 at 12, 14).

[9] The FCC identified these examples as calls "from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers."  2003 Report at 14098, ¶ 142.

prohibition (which the 2003 Report recognized) to extend to calls made to cell phones.  Unlike subsection (a)(2), subsections (c) and (d) by their terms apply only to "residential" numbers; thus, some version of subsection (e) was necessary in order to extend the provisions of subsections (c) and (d) to cellular numbers.  It is unclear why subsection (e) refers to the 2003 Report rather than simply saying, as the report states, that "these rules [subsections (c) and (d)] apply to calls made to wireless telephone numbers," 2003 Report at 14116, ¶ 167, but it seems clear the purpose was not to limit the scope of the dual-purpose prohibition to residential lines.  On the contrary, the 2003 Report expressly confirms the FCC's "belie[f] that wireless subscribers should be afforded the same protections as wireline subscribers."  *Id*.

Having failed to demonstrate that the dual-purpose prohibition is legally inapplicable, the defendant suggests it is factually inapplicable.  According to the defendant, "[t]he *single purpose* of the messages left for Plaintiff was informational …."  (Doc. 52 at 8 (emphasis added)).  As discussed above, in light of the "visit BConnected online to view all of your offers" language (which the defendant consistently ignores), this assertion is facially untenable.

The plaintiff argues that, even without this smoking-gun language, the real purpose of the calls was clearly that of encouraging the purchase of goods and services.  He reasons that neither casinos nor other rational businesses give customers free goods and services out of altruistic motives, but rather do so with the calculated aim of enticing the recipient to couple the freebie with the purchase of other items.  (Doc. 51 at 5, 9-12).  In support, the plaintiff notes the FCC's observation that "[o]ffers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute" advertisement under its regulations.  2003 Report at 14098, ¶ 140.  The defendant ignores the plaintiff's rather plausible argument but, given the defendant's express encouragement to the plaintiff to view offers for sale, the Court need not decide whether it would alone carry the day.

8

In summary, the defendant has failed to show that its messages, as a matter of law, do not constitute "advertisement" or "telemarketing." Its motion to dismiss therefore must be denied.

**II. Motion to Strike.**

The plaintiff moved for leave to file a second amended complaint, attaching a copy of the proposed pleading and describing the changes wrought. (Doc. 37). The Court granted the motion over objection. (Doc. 42). The plaintiff then filed a second amended complaint, but not the version he had represented he would file. (Doc. 44). The defendant moves to strike the second amended complaint on this basis. (Doc. 47 at 22-26).

The plaintiff argues that he "did nothing improper" because: (1) he moved for leave to file a second amended complaint "substantively similar to the draft attached hereto" and did not represent that he would file the proposed pleading as presented; (2) the Court's order granting leave to amend "did not restrict the leave to filing exactly what was attached to the motion"; and (3) he did everyone a favor by making changes that he believes moot the futility objections raised by the defendant in opposing the motion for leave to amend. (Doc. 51 at 19-21).

Whatever the plaintiff may have believed, the Court granted leave to file only the proposed second amended complaint attached to the motion for leave to amend. Only that document has been subjected to review by the Court and objection by the defendant, so only that document has been or could be approved for filing.[10] Language such as "substantively similar" may (or may not) preserve a plaintiff's ability to correct typographical errors, but it does not reserve to him the

---

[10] The District's Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means specify that, "[i]f the document you wish to file requires leave of Court, such as an amended complaint or a document to be filed out of time, the proposed document shall be attached as an exhibit to the motion." (*Id*. at 11). What must be attached to the motion is "the document you wish to file," not an unfinalized draft of the document desired to be filed.

9

right to make whatever changes to the document he likes after the Court has permitted its filing.  No doubt the plaintiff's intentions were honorable, but such a practice opens the door to all sorts of potential abuses.  Because the plaintiff filed the second amended complaint without judicial authorization or the defendant's written consent, Fed. R. Civ. P. 15(a)(2), the pleading must be stricken.

The defendant's motion to strike the class allegations addresses in part allegations that appear in the second amended complaint but not in the first amended complaint.  Since the second amended complaint is being stricken, the motion to strike the class allegations is due to be denied as moot.[11]

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **denied**, its motion to strike the second amended complaint is **granted**, and its motion to strike the class allegations is **denied as moot**.  The second amended complaint is **stricken**.

DONE and ORDERED this 6th day of May, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] Because the defendant's motion to strike is couched as a back-up alternative to its primary motion to dismiss, striking the second amended complaint does not affect the controlling effect of the Court's ruling on the legal issue presented in the motion to dismiss.  Nor would the Court's ruling differ had the motion to dismiss been addressed to the first amended complaint.