IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON BENNETT, etc., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0330-WS-M |
| | ) |
| BOYD BILOXI, LLC, etc., | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion for preliminary approval of class action settlement agreement. (Doc. 79). The plaintiff and the defendant have each filed a brief in support of the motion. (Docs. 80, 85).

The second amended complaint, (Doc. 83), alleges a violation of the Telephone Consumer Protection Act ("the Act"), and specifically a regulation promulgated pursuant thereto. The second amended complaint challenges the defendant's practice of calling persons, without their prior express written consent, by means of an automatic telephone dialing system or with the use of a pre-recorded voice message, to deliver a message including "telemarketing" or "advertisement" as defined by the regulation.

Before reaching the request for preliminary approval of the proposed settlement, the Court must resolve the threshold issue of whether a class should be certified. The parties seek certification under Rules 23(a) and 23(b)(3). The requirements of these rules apply with at least equal vigor in the settlement-class context:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, …, for the proposal is that there is to be no trial. But other specifications of the Rule – those designed to protect absentees by blocking

> unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention … to the justifications for binding the class members.") (internal quotes omitted).

Subject to certain exceptions not presently relevant, the class proposed by the settlement would consist of "all persons who, since October 16, 2013 through the date the class is certified, received a telephone call to a residential or cellular telephone number initiated by, on behalf of or at the direction of Boyd Biloxi which used an artificial and/or pre-recorded voice message or was placed by an automatic telephone dialing system." (Doc. 79-1 at 8).  The Court notes that this is a substantially more expansive class than that requested in the first amended complaint, (Doc. 23 at 9), in at least the following respects:  (1) it reaches both residential and cellular phones, not just cellular; (2) it reaches calls placed both by artificial and/or pre-recorded voice message and those placed by automatic dialing, not just calls placed by automatic dialing; (3) it reaches all calls, not just calls containing "advertisement" or "telemarketing"; and (4) it reaches all persons that received the described calls, not just those that received such calls without having given prior express written consent.  This expanded class definition stems from the second amended complaint, (Doc. 83 at 7), which was filed with the defendant's blessing in association with the instant motion.[1]

The Court does not suggest that a settlement class can never be more expansive than the class sought by the plaintiff, but it is unusual for a defendant

---

[1] The docket entry description provided by the plaintiff states that the purpose of the second amended complaint is to "narrow[w] the scope of the putative class."  It appears, however, to have accomplished exactly the opposite.

voluntarily to give more than a plaintiff has demanded, and such generosity might be prompted by considerations that work to the detriment of absent class members. While the Court presently draws no such firm conclusion, this circumstance underscores the Supreme Court's admonition to scrutinize settlement classes closely.

The Rule 23(a) requirements for certification of any class action are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The additional requirements for certification under Rule 23(b)(3) are: (5) predominance; and (6) superiority. *Amchem*, 521 U.S. at 613, 615. Despite the parties' briefing, (Doc. 80 at 3-9; Doc. 85 at 4-5), several of these elements appear to be in question.

As to commonality, the plaintiff states there "are only two issues" in this lawsuit and that they are common to all class members: whether the calls they received constitute "advertising" and/or "telemarketing" and whether the class members gave prior express written consent to receive the calls. (Doc. 80 at 4-5).[2] No doubt these are questions that must be answered as to each class member, but the plaintiff has not shown that the answer to these questions must be the same for each class member. It would seem that whether any particular class member gave prior express written consent would depend on what that class member did, and the plaintiff has not suggested that all class members did the same thing; on the contrary, he notes the defendant's argument that class members gave consent "in a variety of ways over time." (Doc. 80 at 11). Similarly, whether a call constituted advertisement or telemarketing under the governing regulation would seem to depend on the content of the message, and the plaintiff has not attempted to show that the messages – more than 400,000, (Doc. 80 at 10), spread over the relevant two-year period and across the entire continent – never varied, or never varied in any meaningful way. Nor has the plaintiff addressed the degree of variation in resolution of a nominally common issue that may be tolerated before the question

---

[2] The plaintiff adds "telephone solicitation" to this list, (*id.*), but that appears to lie beyond the scope of the second amended complaint.

is no longer "common to the class" within the contemplation of Rule 23(a)(2). As the plaintiff acknowledges, (Doc. 80 at 4), commonality requires that the action "must involve issues that are susceptible to *class-wide proof*." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (emphasis added). The plaintiff has failed to show that its identified common questions meet this standard.

As to typicality, the first amended complaint repeatedly restricts the plaintiff's claim to one involving calls to his cellular phone, and it is clear he received no objectionable calls on his residential line, yet the proposed class extends to persons receiving calls on residential lines. While it is not clear that there is any meaningful legal difference between the two sorts of phone lines, the plaintiff's careful restriction of his claim and the previously proposed class to cellular phones indicates that his claim might not be typical of claims regarding residential lines. Likewise, if the messages received have varied over time and/or space, it is not clear the plaintiff's claim – restricted to a few calls over a four-month period – is typical of all or most class members. Finally, the defendant itself questions whether the plaintiff's claim is typical of those class members who joined the rewards program by different methods. (Doc. 85 at 4-5). The plaintiff, who ignores these tensions, has failed to show that his claim is typical of those of the class.

As noted, the only legal claim in this lawsuit is that the defendant placed telephone calls, by certain means and without prior express written consent, that contained "telemarketing" or "advertisement" under the governing regulation. The proposed class, however, is defined to include persons who received calls so placed without their prior express written consent, regardless of whether the calls they received contained telemarketing or advertisement, and the claims procedure does not require any class member to demonstrate, or even assert, that the call(s) he or she received constituted telemarketing or advertisement. (Doc. 79-1 at 16). This appears to mean that any class member that received any pre-recorded or automatically dialed call from the defendant for any purpose (e.g., notification of

4

an event, reminder of a deadline, request for payment) without prior express written consent can recover in a lawsuit that targets only unlawful telemarketing and advertisement.  It is not immediately apparent how the plaintiff's claim could be typical of such a class member's (non-existent) claim.[3]

As to adequacy, the same observations apply.  Moreover, it is not certain that the plaintiff has not proposed a class, and a class settlement, that disadvantages certain class members to the benefit of the plaintiff and/or others in effecting a settlement.  For example, by (1) expanding the class to include persons that received calls which did not include advertisement or telemarketing, and (2) broadly releasing every conceivable claim related to the calls, (Doc. 79-1 at 7), the plaintiff has structured a settlement in which persons with no viable claim in this lawsuit, but with claims under other laws (for example, invasion of privacy and other state claims, FDCPA and other federal claims), may lose all rights they might otherwise have to pursue such claims.  On the flip side, it is not clear how the plaintiff has protected the interests of those with a viable claim by simultaneously agreeing to both a fixed recovery fund and participation in that fixed fund by persons with no viable claim in this lawsuit, thereby at least potentially diluting the recovery of those with a viable claim.  The Court does not say that this situation reflects inadequacy of representation, only that the plaintiff must come to grips with these and other issues if he hopes to persuade the Court to certify the proposed class.[4]

---

[3] Indeed, it is not clear that the Court may properly certify a class specifically designed to include persons that could not possibly have a claim under the only legal theory advanced in the lawsuit.

[4] The Court is familiar with plaintiff's counsel from other lawsuits, but it still finds the plaintiff's effort to establish counsel's credentials to pursue this action as class counsel somewhat pro forma.  Unsworn assertions in brief, (Doc. 80 at 6), an eight-line declaration, (Doc. 80-1), and a resume' consisting mostly of a listing of reported cases, (Doc. 80-2), is not the strongest showing imaginable.  It certainly does not address the factors that the plaintiff himself identifies as critical to the determination of the adequacy of counsel.  (Doc. 80 at 6).

As to predominance, the plaintiff cannot establish it without first establishing commonality. The plaintiff asserts that predominance stems from the prior-express-written-consent issue, (Doc. 80 at 7), but, as discussed above, he has failed to show that this qualifies even as a common issue. The Court also reminds the plaintiff that "the predominance criterion is far more demanding" than the commonality requirement. *Amchem*, 521 U.S. at 623. The plaintiff stresses the *Amchem* Court's observation that predominance is satisfied in "certain cases alleging consumer … fraud," 521 U.S. at 624, but without demonstrating that this is such a case. The advisory committee comments to which the Supreme Court cited confirm that a consumer fraud case "may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23 advisory committee notes 1966 amendment. These are exactly the concerns identified by the Court in noting the plaintiff's failure to show that the telephone messages were materially unvaried and that the existence vel non of prior express written consent could be determined for the class as a whole without individual determinations.

The plaintiff says that class treatment is superior to other options due to "the small amount of damages involved in each individual claim," (Doc. 80 at 7), and he describes the class members' claims as "negative value claims," where the costs of litigation exceed expected individual recovery. (*Id*. at 8). But the plaintiff has not shown this to be so. According to the second amended complaint, the Act provides for a minimum recovery of $500 for each call in violation of the regulation, and a maximum recovery of $1,500 for each such call. (Doc. 83 at 3). The plaintiff identifies eight calls he received in violation of the Act and regulation, (*id*. at 4-5), meaning his minimum recovery is $4,000 and his

maximum $12,000.[5]  Moreover, the Act provides for recovery of attorney's fees, which suggests no inability to attract counsel and no diminution of a plaintiff's recovery in order to compensate counsel.  The plaintiff has failed to explain how, or demonstrate that, he or any other class member holds a negative value claim under these circumstances.

Rule 23 sets forth specific matters for a court to consider in weighing the relative superiority of a class action compared with other mechanisms.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  The *Alchem* decision renders the last of these considerations irrelevant in the settlement class context, 521 U.S. at 620, but the others remain intact.  The plaintiff, however, has not acknowledged or addressed them, much less offered legal authority or analysis in support.  Moreover, the defendant "continues to believe that the class mechanism here may not constitute the superior method to resolution of these legal issues."  (Doc. 85 at 5).

Finally, the defendant questions whether the plaintiff can establish that "class members are identifiable," which the defendant considers "a difficult and cumbersome task in a world where cell phone subscribers frequently drop and exchange cellular telephone numbers."  (Doc. 85 at 5).  It is not clear how a class action could be a superior mechanism if the identity of the class membership is sufficiently problematic.

The Court has formed no fixed opinion whether any of the issues identified herein – or any others that may be lurking[6] – are or might be fatal to certification.  But the Court is of the firm opinion that the plaintiff has not come close to bearing his burden of persuading the Court to certify the proposed settlement class.  According to the proposed settlement, the defendant is prepared to part with up to

---

[5] Dividing the estimated number of calls by the estimated number of class members, the average class member received about six calls and so has a claim for about $3,000 to $9,000.

[6] The parties should not assume there are no additional problems with their presentation.  The Court has addressed only those that seem most obvious on first acquaintance.

$12 million, up to $2 million of which is earmarked for plaintiff's counsel, and the plaintiff is prepared to bind almost 70,000 individuals to the parties' proposed resolution. There is certainly enough at stake to incentivize the plaintiff to identify and obtain the evidence, and to research and effectively present the legal argument, needed to support certification.

"[A] plaintiff still bears the burden of establishing every element of Rule 23, … and a district court's factual findings must find support in the evidence before it." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). The plaintiff is thus **ordered** to file and serve, on or before **January 7, 2016**, a supplement to the instant motion that presents whatever evidence and legal argument he believes necessary and sufficient to bear his burden. The defendant is **ordered** to file and serve, on or before **January 21, 2016**, its response to the plaintiff's supplemental filing.

DONE and ORDERED this 7th day of December, 2015.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE