IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON BENNETT, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0330-WS-M |
| | ) |
| BOYD BILOXI, LLC, etc., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is again before the Court on the plaintiff's motion for preliminary approval of class action settlement agreement. (Doc. 79). After the plaintiff and the defendant filed briefs in support of the motion, (Docs. 80, 85), the Court entered an order questioning the appropriateness of a settlement-only class and ordering additional briefing on that issue. (Doc. 86). The parties have complied. (Docs. 89, 90). After careful consideration, the Court concludes that the motion is due to be granted in part, with the remainder held in abeyance pending further input from the parties.

**BACKGROUND**

The second amended complaint, (Doc. 83), alleges a violation of the Telephone Consumer Protection Act ("the Act"), and specifically a regulation promulgated pursuant thereto. The second amended complaint challenges the defendant's practice of calling persons, without their prior express written consent, by means of an automatic telephone dialing system or with the use of a pre-recorded voice message, to deliver a message including "telemarketing" or "advertisement" as defined by the regulation. The second amended complaint seeks certification of a nationwide class of individuals receiving such calls during

a particular period. The parties have negotiated a settlement, which calls for certification of a nationwide class and monetary relief to successful class claimants.

The plaintiff seeks the following relief: (1) conditional certification of the proposed settlement class for settlement purposes only; (2) preliminary approval of the proposed settlement; (3) approval of notice to the settlement class; (4) appointment of a class representative and class counsel; and (5) establishment of dates for out-outs, objections and a final fairness hearing. (Doc. 89 at 2).

## I. Class Certification.

The parties seek certification under Rules 23(a) and 23(b)(3). The requirements of these rules apply with at least equal vigor in the settlement-class context:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, …, for the proposal is that there is to be no trial. But other specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention … to the justifications for binding the class members.") (internal quotes omitted).

The settlement class is defined as follows:

> All persons who, since October 16, 2013 through the date the class is certified herein, received a telephone call to a residential or cellular telephone number initiated by, on behalf of or at the direction of Boyd Biloxi which used an artificial and/or pre-recorded voice message or

2

was placed by an automatic telephone dialing system.

(Doc. 79 at 1). This definition echoes that proposed in the second amended complaint, which was filed with the defendant's blessing in association with the instant motion. (Doc. 83 at 7).

In its earlier order, the Court noted that this class definition was "substantially more expansive" than that proposed by the first amended complaint and sought reassurance that this expansion was not the result of cooperation between the parties designed to favor either the defendant or certain class members. (Doc. 86 at 2-3). The parties have provided that assurance. Reference to residential telephone lines, and to artificial and/or prerecorded voice messages, first appeared in a much earlier iteration of the second amended complaint, which pleading was struck for failure to follow Rule 15(a). (Doc. 44 at 7). Previous references to the absence of prior express written consent were likewise omitted from the struck second amended complaint. (*Id.*). Finally, while the second amended complaint eliminates the previously pleaded restriction that class members have received calls containing "advertisement" or "telemarketing," discovery reflects that all telephone communications with the proposed class contained the same or materially similar language that the plaintiff argues (and the defendant denies) constituted advertisement or telemarketing. (Doc. 89-1, ¶ 5). Elimination of this qualifier thus does not affect the scope of the class, but it does obviate resolution, judicially or in the claims process, of this essentially legal question.

The Rule 23(a) requirements for certification of any class action are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The additional requirements for certification under Rule 23(b)(3) are: (5) predominance; and (6) superiority. *Amchem*, 521 U.S. at 613, 615.

Within the class period, the defendant's records reflect that calls falling within the class definition were made to 68,377 different individuals. (Doc. 89-1, ¶ 6). The numerosity requirement is thus satisfied.

Commonality requires that the action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). As the parties acknowledge, a plaintiff must demonstrate that he or she received one or more telephone calls at a cellular or residential number; that the call was made using an automatic telephone dialing system or an artificial or pre-recorded voice; that the message contains advertisement or telemarketing; and that the plaintiff had not given prior express written consent to receive such calls. 47 C.F.R. § 64.1200(a)(2), (3). The defendant confirms that all subject calls were made using a pre-recorded voice pursuant to a longstanding, standardized program. (Doc. 89-1, ¶¶ 4-6). The defendant also confirms that all messages sent during the relevant time period contained the same or materially similar language, (*id*. ¶¶ 5, 9), such that all of them either did or did not contain advertisement or telemarketing. And, while the defendant says there were several different mechanisms by which class members voluntarily provided their telephone numbers, whether the act of providing telephone numbers (the only basis for consent argued by the defendant) constitutes express written consent applies equally to all class members. The commonality requirement is thus satisfied.

The plaintiff's claim is not meaningfully different from those of the class members. While the plaintiff received calls only on his cellular number, the legal requirements for cellular and residential lines are the same. As noted above, the messages sent during the class period did not change in any legally meaningful sense, so all such calls either did or did not contain advertisement or telemarketing. As also noted, while the mechanism for obtaining class members' telephone numbers varied to some degree (such that the plaintiff presumably did not utilize all of them), the legal question whether simply obtaining a person's telephone number satisfies the legal requirement of express written consent to receive otherwise impermissible calls remains constant and dispositive. The typicality requirement is thus satisfied.

In light of the foregoing, there is no concern regarding the adequacy of the class representative. Nor, given the evidence presented, (Docs. 89-4, 89-5), and the Court's experience with them, is there any concern regarding the adequacy of class counsel. The adequacy requirement is thus satisfied.

The discussion of commonality reflects that essentially every factual or legal question presented by this case can be decided on a class-wide basis. The predominance requirement is thus satisfied.

The plaintiff says that a class action is superior to individual actions because, between low statutory damages and the inability to recover attorney's fees, the costs of pursuing claims under the Act generally exceed expected recovery, such that these claims, brought individually, have a negative value. (Doc. 89 at 17-18). The plaintiff's position is surprising, given that all four iterations of his complaint – including the one filed in conjunction with the instant motion – demand an award of attorney's fees. (Doc. 83 at 12). Nevertheless, he appears to be correct.[1] "[T]he most compelling justification for a Rule 23(b)(3) class action [is] the possibility of negative value suits …" *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1240 n.21 (11th Cir. 2000).

Rule 23 sets forth specific matters for a court to consider in weighing the relative superiority of a class action compared with other mechanisms. Fed. R. Civ. P. 23(b)(3)(A)-(D). The *Amchem* decision renders the last of these considerations irrelevant in the settlement class context, 521 U.S. at 620, but the others remain intact. As to subsection (A), the negative-value issue discussed above indicates the class members have little interest in individually controlling the prosecution of separate actions. As to subsection (B), there is no other pending litigation by or against the defendant regarding the challenged practice. As to subsection (C), there is no evident undesirability in concentrating the litigation in

---

[1] *E.g., Southam v. Halsted Financial Services, LLC*, 2015 WL 5215987 at *2 (S.D. Fla. 2015); *Bauer v. Midland Credit Management, Inc.*, 2012 WL 6733649 at *6 (M.D. Fla. 2012).

this District, which is the class representative's home district and which lies barely 60 miles from the casino the activities of which the challenged messages concerned.

In its prior brief, the defendant disputed whether the plaintiff can establish that "class members are identifiable," which the defendant considered "a difficult and cumbersome task in a world where cell phone subscribers frequently drop and exchange cellular telephone numbers." (Doc. 85 at 5). The Court in its previous order questioned how a class action could be a superior mechanism if class members could not be identified. (Doc. 86 at 7). The defendant now explains that its comments only "attempted to place into context, from Defendant's perspective, the settlement decision process." (Doc. 90 at 1). Perhaps, but the defendant's purpose in pointing out a potential obstacle to certification is not grounds for ignoring the obstacle. The Court, however, is satisfied that no serious identification issue exists. According to the defendant's own witness, the program it utilizes generates a call report that identifies the number called, the name of the person called (all of whom were rewards program members, who had given their names and telephone numbers to the defendant), and the address of the person called. (Doc. 89-1, ¶ 7).[2] The Court does not perceive how, under these circumstances, it could be difficult to identify members of the class

"[A] plaintiff still bears the burden of establishing every element of Rule 23, … and a district court's factual findings must find support in the evidence before it." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). The Court finds that the plaintiff has established, with record evidence, every element

---

[2] As discussed in Part III, there is some question whether the defendant has addresses, or good addresses, for substantially all class members. Any shortcomings in that information affect the adequacy of delivering notice by mail, not the identification of the class members.

for certification under Rule 23(b)(3).  The Court therefore joins others that have found actions under the Act appropriate for class certification.[3]

For the reasons set forth above, and for the purposes of settlement only, the motion for conditional certification of the proposed settlement class for settlement purposes only is **granted**.  The Court conditionally **certifies** this action as a class action on behalf of the following settlement class:

> All persons who, since October 16, 2013 through May 11, 2016, received a telephone call to a residential or cellular telephone number initiated by, on behalf of or at the direction of Boyd Biloxi which used an artificial and/or pre-recorded voice message or was placed by an automatic telephone dialing system.

**II. Preliminary Settlement Approval.**

A class action can be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  Final approval can be had only following class notice and a hearing.  *Id*.  First, however, the Court is to "make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class."  *Smith v. William Wrigley Jr. Co.*, 2010 WL 2401149 at *2 (S.D. Fla. 2010).  "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."  *Id*. (internal quotes omitted).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Id*.

---

[3] *E.g., C-Mart, Inc. v. Metropolitan Life Insurance Co.*, 299 F.R.D. 679 (S.D. Fla. 2014) (Middlebrooks, J.); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013); *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 2016 WL 1394646 (E.D. Wis. 2016); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255 (S.D. Fla. 2014) (Seitz, J.); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, 2014 WL 2946421 (W.D. Ky. 2014); *Strickler v. Bijora, Inc.*, 2012 WL 5386089 (N.D. Ill. 2012); *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc.*, 2012 WL 3027953 (W.D. Mich. 2012), *aff'd*, 757 F.3d 540 (6th Cir. 2014).

The proposed settlement, reached after over a year of litigation and after extensive mediation, appears on its face to be the result of good faith negotiations, and the Court detects no obvious deficiencies. Although the settlement is for a small fraction of the defendant's maximum potential exposure, it appears both that the case is legally and/or factually uncertain at a number of critical points and that class actions under the Act (probably due at least in part to such uncertainties) typically provide monetary relief to individual claimants more or less similar to that proposed here. (Doc. 80-3). The Court therefore is prepared to preliminarily approve the settlement as fair, reasonable and adequate. Due to issues addressed in Part III, however, the Court delays issuing any such ruling.

### III. Class Notice.

Before a class settlement can be finally approved, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Moreover, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. Rule 23(c)(2)(B). The notice requirement, which stems from both Rule 23 and the Due Process Clause, has two primary components: content and manner of distribution. *Adams v. Southern Farm Bureau Life Insurance Co*., 493 F.3d 1276, 1286 (11th Cir. 2007).

"We think that the procedure followed by Kansas, where a fully descriptive notice is sent [by] first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). In *Adams*, the Court approved notice distributed by first class mail with follow-up on returned mailings (and a second mailing when investigation revealed a corrected address), plus publication of notice in *USA Today*, establishment of a toll-free telephone number to field inquiries about the

class action, and posting of class action information on the defendant's website. *Id*. at 1286-87.

The proposed notice here provides for distribution by first class mail. It also provides for prompt re-mailing of any notice returned with a forwarding address.[4] It also provides for maintenance of class action information on a dedicated website, including access to the full class notice, the settlement agreement, and claim forms. (Doc. 79-1 at 15).[5] Except for its failure to provide for publication of notice in a national media outlet, the proposed plan for notice distribution approximates that approved in *Adams*. To the extent the defendant is in possession of reasonably recent mailing addresses for substantially all class members (thereby obviating other forms of notice), the Court is prepared to find that the plan provides for reasonable notice and the best notice practicable under the circumstances, compliant with Rules 23(c), Rule 23(e) and due process.

The parties, however, have failed to establish that the defendant has such a reliable source of addresses. The plaintiff represents vaguely that the defendant obtained addresses when individuals joined the defendant's rewards program, (Doc. 89 at 6), but the settlement agreement provides only for mailing "to the mailing address reasonably available in [the defendant's] electronic records,"

---

[4] Elsewhere, the settlement agreement lists the claims administrator's duties as including "undertaking reasonable efforts to obtain new addresses for returned mail." (Doc. 79-1 at 13). The Court construes this language as the parties' representation – on which the Court relies – that the claims administrator will take prompt and affirmative reasonable steps to find correct addresses for returned notices.

[5] The proposed notice includes a toll-free telephone number (presently blank) at the bottom of each page, and the body of the notice states that class members can obtain a claim form with a toll-free call. (Doc. 79-1 at 42). The claim form also invites claimants to call a toll-free number. (*Id*. at 36). The settlement agreement provides that the claims administrator will be responsible for fielding inquiries about the settlement. (*Id*. at 13). The Court construes these provisions as the parties' representation – on which the Court relies – that a toll-free number to field inquiries will be established and maintained by the claims administrator.

(Doc. 79-1 at 15), which records could be spotty,[6] old,[7] or poorly maintained.[8] The Court is unprepared to approve the proposed plan for distribution of notice without an adequate demonstration that first class mail is reasonably calculated to reach substantially all class members. Failing such a demonstration, the parties will need to devise other, effective means of distributing notice.

To pass muster, notice "must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotes omitted). "Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Id*. (internal quotes omitted). Such information includes "the relief available, the steps necessary to opt out, and the implications of remaining a member of the class." *Adams*, 493 F.3d at 1287.

The proposed notice, (Doc. 79-1 at 39-44), largely complies with these requirements, but the Court notes several apparent deficiencies. First, unlike in *Adams*, the notice does not advise the recipients that, following final approval of the settlement, they will "receive a second notice offering him or her an opportunity to participate in the settlement" by filing a claim form. 493 F.3d at

---

[6] The plaintiff does not represent that addresses were always or routinely collected upon entry in the rewards program, and the defendant's interrogatory responses may be read as suggesting that addresses were collected only when certain of the twelve portals for entry into the program were utilized. (Doc. 89-2 at 11-13). The settlement agreement provides that the defendant will provide the claims administrator with "last known mailing addresses," (Doc. 79-1 at 14), but this statement similarly offers no assurance that current addresses exist for substantially all class members.

[7] The challenged conduct occurred between October 2013 and June 2014, (Doc. 89 at 9), but addresses of longstanding rewards club members could be much older.

[8] The defendant has made no representation, for example, that records of former rewards program members have not been purged.

1286.  It is unclear how class members will know the window for filing claim forms has opened unless they receive such a notice.[9]

Second, the settlement agreement provides that all class members (including those not submitting a claim) release (and covenant not to sue on) all potential claims arising out of the defendant's conduct, whether under the Act or any other legal source.  (Doc. 79-1 at 7, 19-20).[10]  Unlike in *Adams*, however, the notice does not append the release, identify it as "critical," or urge class members to read it "very carefully."  493 F.3d at 1286.  While the notice does say that class members who do nothing will give up their rights to sue "about the issue in this case" and to participate in any lawsuit "for the claims being resolved by this Settlement," (Doc. 79-1 at 39, 43), it is not clear to the Court that this language adequately warns class members regarding the scope of the rights they surrender by not opting out.

Third, the Court notes that the proposed order presented to the Court includes detail regarding class members' responsibilities apparently absent from the notice.  Without pretense of being exhaustive, the Court identifies the following as examples of this incongruity:  (1) the order provides that, if a class member submits both an objection and a request for exclusion, the latter will control, (Doc. 79-1 at 50); (2) the order requires class members to file a notice of

---

[9] The notice informs class members they must file a claim form "by _____," and the settlement agreement provides that the deadline for submitting claims is 45 days after the "settlement notice date" (defined as the date on which class notice is sent). (Doc. 79-1 at 5, 8, 42).  Again, the Court is unclear how claim forms for participating in a settlement could appropriately be required to be submitted before the settlement is finally approved or how such a post-approval deadline could be reliably supplied this early in the process.

[10] The release apparently extends as well to complaints regarding the tax consequences to class members of receiving a class award.  (Doc. 79-1 at 10).

11

appearance if intending to speak at the fairness hearing, (*id*.);[11] (3) the order permits the parties to take expedited discovery, including by deposition, of any objector, on penalty of waiving all objections, (*id*. at 51-52);[12] and (4) the order requires a request for exclusion to include a telephone number at which the class member can be reached, provides that the omission of any requested information from the request will render the request invalid, and further provides that a request to exclude more than one person will be deemed void as to all.  (*Id*. at 52-53).

The Court declines to approve the content of the proposed notice before these and any other lurking issues are appropriately addressed by the parties.

### IV.  Appointment of Class Counsel.

"An order that certifies a class action must … appoint class counsel …." Fed. R. Civ. P. 23(c)(1)(B).  After considering the matters identified in Rule 23(g)(1)(A), and for the reasons set forth in Part I, the Court concludes that Earl Underwood, Ken Riemer and John Cox are adequate class counsel.  The plaintiff's motion for appointment of class counsel is therefore **granted**.  Earl Underwood, Ken Riemer and John Cox are **appointed** as class counsel to represent the settlement class.

### V.  Appointment of Class Representative.

Pursuant to Rule 23, the Court finds that, for purposes of the settlement, plaintiff Jason Bennett satisfies the requirements of typicality and adequacy of representation.  The plaintiff's motion for appointment of a class representative is

---

[11] It is not clear to the Court why a formal notice of appearance should be required to begin with, since the Court and the parties will be aware from the filed objection that the class member intends to speak.

[12] The Court has difficulty imagining why such discovery would be necessary in this case or why such a draconian sanction should be applied.

therefore **granted**. Jason Bennett is **appointed** as class representative of the settlement class.

## VI. Establishment of Dates.

Until notice is approved, the Court finds it premature to establish the date of the fairness hearing or deadlines for objections and requests for exclusion.[13] The Court pauses, however, to offer a few observations.

First, the settlement agreement establishes the deadline for objections and requests for exclusion as 45 days from the "settlement notice date," which is defined to require mailing of class notices within 30 days after the preliminary approval order is entered. (Doc. 79-1 at 6, 8). The Court therefore anticipates establishing these deadlines as the date 75 days after entry of the preliminary approval order.[14]

Second, while the submitted documents generally contemplate that an objection or request for exclusion must be "postmarked" by the deadline, at least once in the proposed notice recipients are advised simply to "mail" their request for exclusion by the deadline. (Doc. 79-1 at 43). This term introduces unnecessary confusion, and the language should be modified to parallel that used with respect to objections. (*Id.*).

---

[13] The plaintiff has not moved the Court to establish a deadline for submitting claim forms. (Doc. 79; Doc. 80 at 13; Doc. 89 at 2). As discussed in Part III, it is not clear that a deadline could be established at this point in the process or without reference to the mailing of a second notice, which notice is not anticipated in the parties' filings.

[14] The proposed preliminary approval order contemplates that the claims administrator will file proof that notice was sent, but it delays such filing until 14 days before the fairness hearing. (Doc. 79-1 at 54). This is too late; if the notice is not accomplished within the 30-day period provided, the time for filing objections and requests for exclusion may be rendered unacceptably short. Therefore, the claims administrator will be required to file proof of the fact and time of mailing the notice within 35 days after the preliminary approval order is entered.

**VII.  Additional Comments.**

The Court has resolved as much of the plaintiff's motion as it can at this time.  Since the parties must address the Court's stated concerns regarding notice, they are encouraged to review the notice, and all their submitted documents, with fresh and critical eyes and to self-identify and correct difficulties and inconsistencies rather than await their discovery and disapproval by the Court.[15]  As a guide to these endeavors but not as an exhaustive compilation, the Court notes the following matters.

First, the settlement agreement contemplates the Court's approval of the claim form and of the claims administrator.  (Doc. 79-1 at 4-5).  The plaintiff's motion, however, does not request such relief.  Nor have the parties actually addressed the proposed form or administrator or demonstrated why their approval would be appropriate.[16]

Second, the settlement agreement and proposed order provide for automatic rejection of requests for exclusion that do not include every item of information listed in the notice.  (Doc. 79-1 at 17, 52).  If requests for exclusion are to be so ruthlessly evaluated, it may be that a form request for exclusion should be made

---

[15] As the Court has previously noted, (Doc. 86 at 7-8), the stakes in this litigation – financial and otherwise – should provide adequate incentive for the parties to do so. Should any inconsistencies or anomalies be discovered after entry of a preliminary order of approval, the Court anticipates resolving them most favorably to the class and class members.

[16] For example, the Court has been provided no indication of the experience and qualifications of the proposed claims administrator to engage in such an undertaking. Nor have the parties explained the incongruity between the claim form (which requires the claimant to identify a single residential or cellular telephone number that received a call) and the settlement agreement (which contemplates the claimant may identify "number(s)" called). (Doc. 79-1 at 16, 36).  As worded, the claim form appears to invite claimants to guess which of their multiple telephone numbers was called two to three years ago, with the penalty for guessing wrong being automatic denial of their claim. (*Id*. at 15).

14

available and advertised so as to minimize the chances a class member will inadvertently fail to supply all required information.

Third, the settlement agreement and proposed order require that any objection must include "proof of receipt of a residential or cellular telephone call from" the defendant. (Doc. 79-1 at 18, 50). The proposed notice mentions no such requirement, (*id*. at 43), and it is difficult to see why there should be such an unrealistic pre-requisite to voicing an objection (other than the improper one of precluding objections).[17] The defendant has records of each telephone number called, and an objection must list the numbers called,[18] so the parties are perfectly capable of demonstrating that a particular objector has no standing to object.

Fourth, the submitted documents require objectors not only to file their objections but to serve them by mail on counsel for both sides. (Doc. 79-1 at 43, 51). The Court does not perceive the point of requiring service by mail of a document that will be filed and therefore served electronically.

Fifth, the proposed order requires the claims administrator to file certain proofs with the Court fourteen days before the fairness hearing. (Doc. 79-1 at 54). As discussed in note 14, *supra*, proof of the fact and time of mailing the notice will have to be filed much sooner than that. In addition, given its centrality to the question whether the dictates of due process and Rule 23 have been satisfied, the claims administrator will also be required to file periodic reports concerning the number of returned notices, the efforts the administrator has made to identify correct addresses and re-send the returned notices, and the promptness with which it has done so.

---

[17] It seems highly unlikely that many class members could provide "proof" that they received a call from the defendant two to three years ago, at all or without investing substantial resources in the attempt.

[18] The notice suggests the objector must identify a single telephone number. (Doc. 79-1 at 43). As discussed in in note 16, *supra*, this does not appear to be an appropriate restriction.

Sixth, the settlement agreement and proposed order purport to authorize the parties to modify the settlement agreement, the claim form, the notice, and other documents without approval of the Court or notice to the class. (Doc. 79-1 at 11, 55). This provision appears to be facially inconsistent with paragraph 15.10 of the settlement agreement, which prohibits amendment of the settlement agreement unless approved by the Court. (*Id*. at 24). More fundamentally, the Court is unpersuaded that it should permit the parties to undo the Court's careful screening, to the potential disadvantage of class members, by altering provisions after their approval by the Court.[19]

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for conditional class certification, appointment of class counsel, and appointment of class representative is **granted**.

The plaintiff is **ordered** to file and serve, on or before **May 25, 2016**, a fully supported motion for approval of the claim form and approval of the claims administrator. The defendant may join in this motion. If it does not, the defendant is **ordered** to file and serve its response to the motion on or before **June 1, 2016**.

The plaintiff is **ordered** to file and serve, on or before **June 8, 2016**, a supplemental brief in support of the instant motion that fully addresses all the concerns identified herein and all other matters the plaintiff believes necessary and appropriate to resolution of his motion. The plaintiff is **ordered** to attach as exhibits thereto an amended claim form, an amended notice, a second notice, and

---

[19] In a related vein, the settlement agreement purports to reserve to the parties the ability to relieve the claims administrator of complying with any of the terms of the agreement regarding the administrator's services if they "would unreasonably hinder or delay such processes or make them more costly." (Doc. 79-1 at 14). While there may be some legitimate uses for such a provision, as written it would appear to authorize the parties to decide what notice is adequate and perhaps work other mischief as well. The Court does not expect to approve such a provision, at least without substantial modification.

16

an amended preliminary order of approval, using highlighting, redlining and/or other clear notations of alterations made to the original versions.[20] The defendant may join in this filing. If it does not, the defendant is **ordered** to file and serve its response to the plaintiff's filing on or before **June 22, 2016**.

DONE and ORDERED this 11th day of May, 2016.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[20] The plaintiff is further **ordered** to comply with the District's requirements for submitting a Word version of proposed orders to chambers via e-mail.