IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JASON BENNETT, on behalf of himself and all others similarly situated | * * * | Civil Action No. 14-00330 |
| **Plaintiff,** | * * | |
| v. | * * * | |
| BOYD BILOXI, LLC, d/b/a IP Casino Resort and Spa, and BOYD GAMING CORPORATION, | * * * * | |
| **Defendant.** | * | |

**PLAINTIFFS' MOTION FOR APPROVAL
OF FINAL SETTLEMENT AND BRIEF IN SUPPORT**

Plaintiff, both individually and on behalf of the class which he represents, moves this Court for final approval the settlement of this action pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  As grounds, Plaintiff shows as follows:

**I   INTRODUCTION, BACKGROUND AND RESPONSE TO NOTICE**

Plaintiff asserted claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") individually and on behalf of others similarly situated. The settlement calls for each class member, who submits a valid claim, to receive a gift card with a $150 cash-equivalent value, redeemable for up to one year from date of issuance at IP Biloxi, or other wholly-owned Boyd Gaming properties. The cards are fully transferrable by the holder.  Notice was delivered to 68,265 class

members, rendering a cash-equivalent value of class benefit of $10,239,750.00 ($150.00 x 68,265 class members).

Through formal and informal discovery, Class Counsel examined relevant practices of defendant regarding telephone solicitation calls and consent given by class members for such calls. The examination revealed questionable practices regarding consent obtained by the defendant before making such calls to class members. The settlement class is a nationwide class and provides for compensation to each class member filing a valid claim and corresponding to the claims the class member possessed taking into consideration the corresponding defenses available to be asserted by Defendant.

The Court preliminarily approved the proposed Settlement, conditionally certified the Settlement Class for purposes of settlement only, approved forms of notice to be given to the Settlement Class Members, and ordered that these notices be disseminated under certain conditions and deadlines. (Doc.s 98 & 100).  The Court preliminarily found that the settlement was reasonable, fair and was negotiated at arm's length.

Pursuant to the Court's order, the Settlement Administrator mailed the Class Notice to the 68,265 members of the Settlement Class.  (Doc. 109).  Delivery of returned notices have been attempted consistent with the notice plan approved by the Court.  The presumed delivery rate of the class mailing is 92.2%.  *Id.*

Response to the class notice has been resoundingly positive.  Of the 68,265

notices mailed, only 33 exclusion requests were received.  Moreover, no class members submitted objections to the terms of the settlement.  The Court did receive two letters from class members which expressed negative reactions to the notice (Doc.s 105 and 106).  However, as discussed in detail below, neither letter addresses, much less criticizes, any specific aspect of the settlement.  Therefore, neither letter constitutes an objection within the meaning of Rule 23(e)(4).  A "small number of objections to the settlement itself may be indicative of endorsement." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 388 (D.N.J. 2012); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990) (10% objection rate indicates class favors settlement).

The number of claims forms received represents another positive response to the notice. The administrator has thus far received claims forms from 7,985 class members, or 11.7% or the class.  (Doc. 109).  This is higher than initially anticipated and is expected to increase over the remaining six weeks of the claims period. [1]  As explained in detail in the separately filed Motion for Attorneys Fee, Incentive Payment and Expenses ("Fee Petition"), this claims rate is well above the rates typical among TCPA settlements. (See Doc. 111, pp. 13-16).

The Class Notice has been provided as directed by the Court and the positive response by class members to that notice reinforces the Court's preliminary finding

---

[1] As explained in the Steve Platt's Declaration, this is above the 5 – 10% expected. Also, a number of the claims forms received were incomplete.  The Administrator is contacting those class members in an attempt to rectify the defects. (Doc. 109).

that the settlement is fair, adequate and in the class members' best interest. Moreover, there is nothing in the administration of the settlement or the response to the Class Notice which provide any challenge to the Court's preliminary determination that the class action and the settlement complies with the requirements of Rule 23. In fact, the relatively high claims rate and extremely low exclusion rate, together with the absence of any objection to the terms of the settlement, all reinforce this Court's preliminary findings.

## II.   STANDARDS FOR CLASS ACTION SETTLEMENT APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires the parties to obtain judicial approval of all class action settlements.  To be approved, a class action settlement must be "fair, adequate, reasonable and not the product of collusion." *Leverso* v. *South Trust Bank,* 18 F.3d 1527, 1530 (11th Cir. 1994).  Public policy strongly favors the pretrial settlement of class action lawsuits. See, e.g., *In re U.S. Oil and Gas Litigation,* 967 F.2d 489, 493 (11th Cir. 1992). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett* v. *Behring Corp.,* 737 F.2d 982, 986 (11th *Cir.1984); United States v. City of Miami,* 614 F.2d 1322, 1344 (5th Cir. 1980). This judicial policy favoring settlements is particularly important in the context of class actions. *In re Oil and Gas,* 967 F.2d at 493.

The Eleventh Circuit has outlined several factors useful in making the determination of fairness in approving a settlement. In determining whether the

settlement meets this goal at a fairness hearing, a court must examine the following: (i) whether the settlement was a product of fraud or collusion; (ii) the complexity, expense, and likely duration of the litigation; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the factual and legal obstacles prevailing on the merits; (v) the possible range of recovery and the certainty of damages; and (vi) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *U.S.* v. *Alabama,* 271 Fed.Appx. 896, (11th Cir. March 28, 2008); *Leverso,* 18 F.3d at 1530; *Bennett,* 737 F.2d at 986; *see also Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147-51 (11th Cir.1983); *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195,213 (5th Cir. 1981). Thus, in deciding whether there is good cause to approve a settlement, the Court must determine that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible recovery.

Examination of these factors supports the approval of the settlement in this case.

## A.  <u>Whether the Settlement was a Product of Fraud or Collusion</u>

After assessing the size and scope of the class, the merits of the claims and defenses, and the potential damages available to the class, Class Counsel and Defendant agreed to explore through mediation the potential settlement of this

matter. The Parties retained a J.A.M.S. mediator with extensive TCPA settlement experience. The mediation took place at the Santa Monica California office. Ultimately, the mediation resulted in the execution of a mutually agreeable term sheet.

On preliminary approval, the parties have apprised the Court of the factors and events leading to the settlement and have satisfied the Court that the settlement terms lie within the range of reasonable outcomes for TCPA settlement and that the settlement was the result of arms-length negation free of fraud or collusion.  (Doc. 100).  As stated, the response to the class notice reinforces the Court's finding that the settlement is fair, reasonable and in the class members' best interest.

**B. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>**

Complex litigation --like the instant case -- can occupy a court's docket for years, depleting the resources of the parties. *Cotton v. Hinton,* 559 F. 2d 1326, 1331 (5th Cir. 1977). For this reason, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U. S. Oil and Gas Litigation,* 967 F.2d 489, 493 (11th Cir. 1992).

This matter was settled before trial, but after extensive work by all parties. The length of time necessary to reach a final result would have occupied many more months of judicial resources and vast amounts of attorney time. The amount of time that the various counsel have invested in this case, as well as the risk undertaken by class counsel, is substantial.  (See Fee Petition, pp. 17-20 (Doc. 111)).   The

pleadings and briefs previously filed demonstrate that this case has been, and would continue to be, difficult and expensive to resolve.  Consequently, settlement of this action is in the best interests of judicial economy and the Settlement Class.

C. __The Stage of the Proceedings and the Amount of Discovery Completed__

Because the facts surrounding Defendant's telemarketing campaign practices are largely undisputed, the parties were in an excellent position to assess the respective weaknesses and strengths of the claims.  The progress of the case allowed each side to present to the Court its legal position and the facts supporting them.  While the settlement has occurred at a relatively early stage, ample information has been generated to allow the Court a sound basis to judge whether the settlement is fair. *See Perez v. Asurion Corp.* , 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 544 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990); *In re Combustion, Inc.,* 968 F. Supp. 1116, 1127 (W.D. La. 1997).  That preliminary determination has been reinforced by the class members' response to the notice.

D. __The Factual and Legal Obstacles Prevailing on the Merits__

Probability of success and the range of possible recovery are important factors in determining if a settlement is reasonable. In weighing these factors, the trial court does not have "the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) (citing *City of Detroit v. Grinnell Corp.,* 495

F.2d 448 (2d Cir. 1974)); *Knight v. Alabama,* 469 F. Supp. 2d 1016 (N.D. Ala. 2006). Rather, judicial evaluation of a proposed settlement of a class action involves a limited inquiry into whether the possible rewards of litigation with its risks and costs are outweighed by the benefits of the settlement. *See Grinnell Corp.,* 495 F. 2d at 462. In most situations, unless the settlement is "clearly inadequate, its acceptance and approval are preferable to a lengthy and expensive litigation with uncertain results." *Newberg on Class Actions* § 11.50 (3rd ed. 1992).

Plaintiff firmly stands behind his Complaint and counsel believe that substantial facts were revealed which strongly support the unlawfulness of Defendant's telemarketing campaign. On the other hand, this case involves complexities and risks inherent in any TCPA case, plus some unique to this one. The TCPA is a uniquely complex statute and the surrounding law and regulatory guidance is relatively new case-law and ever-changing. This case is novel on several levels. The issue of whether these subject robo-calls constituted "advertising" or "telemarketing" remained a threshold merits issue (despite this Court's order denying Defendants' motion to dismiss) which would have been fully addressed in dispositive motions and, if the case survived, at trial. Furthermore, the level of consent required is subject to FCC guidance and there existed a possibility that Defendant could have received cover from retroactive waivers granted by the FCC. Adding to that was the risk of an adverse decision by the U.S. Supreme Court in its review of *Robins v. Spokeo*, 742 F.2d 409 (9th Cir. 2014) *cert. granted*, 135

S.Ct. 1892, 191 L.Ed 2d 762 (2015), which could have rendered null all TCPA class actions by requiring actual harm as a standing prerequisite.  Instead, the Court clarified that denial of a statutory right confers injury-in-fact sufficient to confer standing.  *Church v. Accretive Health, Inc.,* 2016 WL 3611543, slip op. at p. 3 (11th Cir. July 6, 2016).

The risks and obstacles facing Plaintiff certainly justify the compromise that produced the class settlement.  That only 33 class members requested exclusion from the settlement reinforces this point and the fairness of the settlement. An overwhelming majority of class members are satisfied with the settlement that resolves these uncertainties.

### E. The Possible Range of Recovery and the Certainty of Damages

Settlements, by definition, are compromises which "need not satisfy every concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *Alliance to End Repression v. City of Chicago,* 561 F. Supp. 537,548 (N.D. Ill. 1982).

The TCPA assigns damages of $500 per unlawful call.  TCPA class actions typically involve many thousands of calls, placing the certainty of recovering the maximum benefit for the class out of reach for all but the largest defendants.  This case is no exception.  On the other hand, the large number of approved TCPA settlements provides a substantial sample-size against which the Court may measure

the adequacy of this settlement.  The range of recoveries in approved TCPA settlements is explored in detail in the Fee Petition.  (Doc. 111, pp. 15-17).  This information was also provided to the Court on preliminary approval (Doc. 80-3) and supports the Court's preliminary finding that "the settlement falls within the range of reasonableness."  (Doc. 100, p. 2).  The positive response from class members to this settlement reinforces that determination.

### F. The Respective Opinions of the Participants, Including Class Counsel and the Absent Class Members

The Court may rely on the opinions of class counsel about the settlement agreement's fairness and adequacy. *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977); *Austin v. Hopper,* 28 F. Supp. 2d 1231, 1237 (M.D. Ala. 1998). Class counsel fully endorse the settlement as being fair and reasonable for the class.  Again, the class members' response conveys a high level of satisfaction with the settlement. A settlement can be fair even where -- unlike here **--** there is a large number of objectors. *Bennett v. Behring Corp.,* 737 F.2d 982, 988 (11th Cir. 1984); *Pettway* v. *American Cast Iron Pipe Co.,* 576 F.2d 1157, 1217 (5th Cir. 1978).  Here, only a fraction have opted out and no one has voiced an attack on the specific terms of the settlement.  This supports counsel's belief that the settlement provides meaningful relief to the class and is due final approval.


## II. THE SETTLEMENT CLASS AND THE REQUIREMENTS OF RULE 23

The settlement class is designed to encompass a broad group of potential claimants to reach a final resolution of this matter. Settlement classes are frequently entered into and approved. Such settlement classes can provide significant benefits to class members. *Manual for Complex Litigation (Fourth)* § 21.612.

Federal Civil Procedure Rule 23(a) enumerates four basic prerequisites that must be established before any action may be maintained as a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the representative parties must be typical of the claims of the class; and (4) the representative parties must be able to fairly and adequately protect the interests of the class.

Each of these elements is met here. TCPA claims have long been considered as appropriate for class certification. *See Goldman v. First Nat. Bank of Chicago*, 532 F.2d 10, 14 (7th Cir. 1976) (citing *Haynes v. Logan Furniture Mart,* 503 F.2d 1161 (7th Cir. 1974)).  In the filings leading up to the Court's preliminary approval, Plaintiff addressed each of the Rule 23 requirements.  (Doc.s 80 and 89).  The Court conducted a rigorous analysis of each element as applied to this class and concluded that the Rule 23 elements are met.  (Doc.s 91 and 100).  Nothing in the administration of the settlement or the response by class members presents any challenge to the Court's finding that these elements are satisfied.

## **CONCLUSION**

This class and the settlement meet the requirements of Rule 23 and the class response to the notice raises no challenges to the Court's prior determination that this settlement is fair, adequate, reasonableness and in the best interest of the class. To the contrary, the response the class notice reinforces those findings.   Final approval of the settlement is appropriate. [2]

Respectfully submitted,

*/s/ Kenneth J. Riemer.*
Kenneth J. Riemer
(RIEMK8712)
Earl P. Underwood, Jr
Underwood & Riemer, PC
166 Government Street, Ste.
Mobile, Alabama 36602
epunderwood@alalaw.com
kjr@alaconsumerlaw.com

*/s/ John R. Cox*
John R. Cox, Esq.
9786-A Timber Circle
Spanish Fort, Alabama 36527
jrc@jrcoxlaw.com

---

[2] A proposed order is filed herewith as Exhibit 1.

## <u>CERTIFICATE OF SERVI CE</u>

I hereby certify that on October 24, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to counsel of record.

/s/ *Kenneth J. Riemer*
KENNETH J. RIEMER
